UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

_____

| | |
|---|---|
| HATTIE SHORTER | CIVIL ACTION NO. 1:04-CV-0467 |
| -vs- | JUDGE DRELL |
| RAPIDES PARISH<br>SCHOOL BOARD, ET AL. | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court are Motions for Summary Judgment on the merits (Doc. 12) and on the issue of qualified immunity (Doc. 11) filed by Defendants Rapides Parish School Board (hereinafter "School Board"), Wilton Barrios, Jr., Steve Berry, E.L. Paulk, Herbert Dixon, Stephen Chapman, Rodessa Metoyer, Paul Dauzat, Al Davis, John Sams, Patsy Jenkins, and Gary Jones (hereinafter collectively referred to as "individual defendants"). The individual defendants were sued in their individual capacities. After reviewing the parties' pleadings and the applicable law, the Defendants' Motion for Summary Judgment on the merits (Doc. 12) will be granted in part and denied in part. Their Motion for Summary Judgment on the issue of qualified immunity (Doc. 11) will be granted.

I.      FACTUAL BACKGROUND

Plaintiff, Hattie Shorter, is an African-American woman who worked for the Rapides Parish School Board for twenty-nine (29) years in various capacities.

(Doc. 1).  Prior to August  2003, she worked as the Coordinator of the Truancy Center for ten years.  Her position as Coordinator was memorialized in a series of contracts with the School Board.  Each contract provided for a ten-month term of employment.  In March 2003, Ms. Shorter learned her Coordinator position was in jeopardy, but had not been eliminated, pursuant to a  proposed "Reduction in Force" (hereinafter "RIF") implemented by the School Board in response to an approximately ten million dollar budget shortfall that year. (Doc. 15, Exhibit 41, Deposition of Hattie Shorter, p. 18).  Ms. Shorter signed a new, ten-month contract for the Coordinator position in June 2003.  The contract bore the signature of Patsy Jenkins, the School Board Superintendent.   Defendants claim the "signature" was really a stamp improperly affixed to the contract by the School Board secretary and that Dr. Jenkins never authorized the contract.  The contract did not state it was subject to a RIF.  Two months later, in August 2003, Ms. Shorter received a letter from the Director of Personnel for the Rapides Parish Schools, informing her that her position of Truancy Center Coordinator was being eliminated and that she was being reassigned as a special education teacher pursuant to the RIF.  Ms. Shorter's salary would be reduced by approximately $6,700.00 per year as a result of the transfer.

Plaintiff promptly requested a hearing regarding her reduction in salary, but was verbally informed that her Coordinator position would be reinstated without the hearing.  In December of 2003, Ms. Shorter wrote to Dr. Jenkins,

inquiring about her employment status. Dr. Jenkins told her the School Board was still working to fund her former position. Subsequently, Dr. Jenkins left her job as Superintendent. One month later, Dr. Jenkins' replacement, Defendant Gary Jones, informed Ms. Shorter that her former position had been permanently eliminated and he would not recommend it be reinstated. Ms. Shorter retained her new position as a special education teacher, however. Although she was assigned to a new position, Ms. Shorter did not work in the school district after her job as the Truancy Coordinator was eliminated. (Doc. 12).

Pursuant to the RIF, the School Board also eliminated several other main-office positions, including the Secondary Supervisor and the Elementary Supervisor, jobs held by Caucasian women. Both women were later assigned to different administrative positions. The School Board also relocated two other Caucasian individuals to new positions after the RIF eliminated their prior jobs. Additionally, Defendants terminated the position of Coordinator of Learning Media Services & Testing in accordance with the RIF. However, the position was restored once the School board realized it was necessary for the school system to function properly. Before the media services job was eliminated and after it was reinstated, the position was held by an African-American woman. (Doc. 12). Finally, despite its avowed commitment to eliminate employees and alleviate budget concerns, the School Board hired two Caucasian females for

administrative positions. (Doc. 1). The parties dispute which, if any, of these positions are administrative jobs for which Ms. Shorter was qualified.

II.     Procedural History

Plaintiff instituted this lawsuit against the School Board and the individual defendants on February 9, 2004. She alleged (1) that Defendants wrongfully terminated her employment on account of race in violation of (a) the Equal Protection Clause of the Fourteenth Amendment, (b) the Louisiana Constitution, and (c) School Board policy; (2) she was improperly denied a hearing prior to the elimination of the Truancy Coordinator position in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments; and (3) the School Board breached her June, 2003 employment contract. Plaintiff brings her federal equal protection and due process claims via 42 U.S.C. § 1983.

Defendants filed two Motions for Summary Judgment, one raising the defense of qualified immunity for all individual defendants (Doc. 11) and another addressing the merits of the case. (Doc. 12). In their Motion for Summary Judgment on the merits, Defendants provide the Court with five arguments as to why they have no liability on Ms. Shorter's claims. First, Defendants argue that the consent decree entered into in December 2000 is not applicable to Ms. Shorter's actions because this Court declared the School Board unitary with

regard to administrative placements in 2002.[1]  According to Defendants, the effect of the system's being declared unitary in the area of administrative assignments is that Ms. Shorter must then prove the Defendants intentionally discriminated against her. Defendants claim she has failed to do so.  Second, Defendants assert Ms. Shorter has failed to prove a *prima facie* case of discriminatory purpose as is required to sustain an action under the Fourteenth Amendment.  Yet, even if Plaintiff established a *prima facie* case, Defendants claim they are entitled to summary judgment because the School Board used racially neutral selection criteria and procedures. (Doc. 12). Third,  Defendants give two reasons why they say Ms. Shorter was not denied due process.  They contend she failed to identify a specifically protected property interest of which she was deprived. Furthermore, even if Ms. Shorter did have a protected property interest, Defendants assert that she was not denied due process because she was present at the meeting during which elimination of her position and reduction of her salary were discussed.  According to Defendants, Ms. Shorter was welcome to participate in the meeting and verbally comment on the proceedings, but declined to do so. Fourth, Defendants aver they did not consent to creating a new employment contract with Plaintiff, and the lack of mutual assent precludes the creation of a *valid* contract.  Therefore, they argue that no breach of contract

---

[1] Both parties agree that the Rapides Parish School Board was declared unitary in the area of administrative assignments at the system level by this Court in August 2002.  The parties disagree, however, about the legal repercussions of that declaration.  (Docs. 12 and 15).

occurred with respect to their refusal to reinstate her original position. Finally, Defendants assert that qualified immunity protects the individual defendants because their actions were undertaken in the course of performing their public duties and were objectively reasonable in light of the known facts and law.

Plaintiff opposes both motions (Docs. 15 and 16). She retorts that Defendants acted with racial animus and a discriminatory purpose by choosing Caucasian employees to fill positions for which she was qualified; that Defendants failed to follow proper School Board procedures prior to her demotion, thereby denying her due process; and that she entered into a binding contract with the School Board to work as a Truancy Coordinator. Plaintiff further argues the individual defendants were well aware their actions were in violation of her clearly established constitutional rights, and therefore they are not entitled to raise a qualified immunity defense.

The Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1343 and 1367.

III.    Law and Analysis

        A.   Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file . . . together with the
> affidavits show that there is no genuine issue as to any material
> fact and that the moving party is entitled to judgment as a matter

> of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, the mere existence of a scintilla of evidence in support of the movant's position will not be sufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff.  <u>Stewart v. Murphy</u>, 174 F.3d 530 (5th Cir. 1999).

If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.  <u>Eason v. Thaler,</u> 73 F.3d 1322 (5th Cir. 1996)(citing <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 106 S.Ct. 2548 (1986)).  In the analysis, all inferences are drawn in the light most favorable to the nonmovant.  <u>Herrera v. Millsap,</u> 862 F.2d 1157 (5th Cir. 1959).  However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment.  <u>Brock v. Chevron U.S.A., Inc.</u>, 976 F.2d 969 (5th Cir. 1992).

B.   <u>Section 1983 Suits</u>

For a party to be liable under 42 U.S.C. §1983, the defendant must have been delegated policy-making authority under state law.  To support a claim under §1983, the plaintiff must show (1) that the plaintiff was mistreated by a

person acting under color of state law and (2) that the conduct deprived the plaintiff of rights protected by federal statutes or the Constitution. <u>Oladipupo v. Austin</u>, 104 F.Supp. 2d 626, 633 (W.D. La. 2000). Where a § 1983 claim is brought against a governmental agency or official, the plaintiff must also prove that the violation resulted from an official policy or custom. <u>Hafer v. Melo,</u> 502 U.S. 21, 25, 112 S.Ct. 358, 361-62 (1991). In the current action, the parties do not disagree that Defendants were acting under color of state law; rather, the parties disagree as to whether Ms. Shorter's constitutional and/or statutory rights were violated.

When a defendant is sued in his individual capacity, as are all Defendants except the School Board, the plaintiff seeks to impose individual liability on a government officer for actions taken under color of state law. Section 1983 recognizes such suits if the plaintiff can show the official, acting under color of state law, violated a clearly established law and thereby caused the deprivation of a federal right. However, officials are entitled to qualified immunity if their actions reasonably could have been thought consistent with the right they are alleged to have violated. <u>Richardson v. Oldham,</u> 12 F.3d 1373 (5th Cir. 1994).

<u>      C.   Defendant's motion for summary judgment on the merits</u>

      1.   RACIAL DISCRIMINATION

This Court first reviews Ms. Shorter's allegations that Defendants discriminated against her, in violation of School Board Policy, the Louisiana Constitution, and the Equal Protection Clause of the Fourteenth Amendment

because she is a member of a racial minority. Ms. Shorter alleges that the discrimination occurred when Defendants eliminated the position of Truancy Coordinator and failed to consider her for several other positions that became available after she was transferred to the teaching position and when the School Board filled several positions, for which Ms. Shorter considered herself qualified, with Caucasian employees.[2]

> a. Consent Decree

Plaintiff claims that Defendants' actions violate a Consent Decree the School Board entered into in December 2000.[3] Defendants counter with this Court's finding, through Judge F.A. Little, Jr. in August 2002, that the School Board was unitary in the area of administrative assignments at the system level. This, according to Defendants, eliminates any federal control or oversight over the School Board's placement decisions. Therefore, the Court will examine whether the declaration that the School Board was partially unitary impacts the matter now before the Court.

---

[2] Of the positions that Ms. Shorter enumerates for which she was qualified and was passed over, one had been assigned to another woman before the RIF was declared. (Doc. 12.) The Court does not expect the School Board to consider a person for a position that was not available at the time of the RIF. Therefore, failing to assign Ms. Shorter to this position does not indicate any discrimination by Defendants.

[3] Because the parties do not disagree about whether this Court, through Judge F.A. Little, Jr., declared the Rapides Parish School Board unitary in the area of administrative assignments at the system level, the Court presumes that such a declaration was made without recitation or further discussion of the contents of the claimed declaration.

A finding that a school district is unitary "means that a school board is free to act without federal supervision so long as the board does not purposefully discriminate; only intentional discrimination violates the Constitution." Price v. Austin Independent School Dist., 945 F.2d 1307, 1314 (5th Cir. 1991)(citing United States v. Overton, 834 F.2d 1171 (5th Cir. 1987)). Once a district is declared unitary, a usual burden shifting analysis, crafted to apply in situations historically rife with discrimination, does not apply to constitutional claims of discrimination. Price, 945 F.2d at 1313. Rather, in a suit filed after a system is declared unitary, "the plaintiffs bear the burden of proving that the school board acted with the *intent to discriminate*." Id. (emphasis added). Therefore, when a plaintiff brings claims of discrimination against a school district which has been declared unitary, the Court determines only whether the district intentionally discriminated against the individual in violation of the Equal Protection Clause. Id. at 1315.

As discussed below, the Court does not find the School Board intentionally discriminated against Ms. Shorter.

> b. Equal Protection Clause

The discussion of this Court's declaration of the School Board as partially unitary only addresses one aspect of Ms. Shorter's racial discrimination claim. As noted in Defendants' Motion for Summary Judgment on the merits, Ms. Shorter brings her claims under the Equal Protection Clause, but does not bring a claim for discrimination under Title VII. To sustain an equal protection challenge, a

plaintiff must prove "he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001). For equal protection purposes, showing a discriminatory impact, without a discriminatory intent, is not sufficient. Price v. Austin Independent School Dist., 945 F.2d 1307, 1315 (5th Cir. 1991).

Plaintiff's claim that Defendants violated her rights under the Equal Protection Clause must fail. While she has shown that her favored position was terminated, she has not demonstrated she was treated differently from similarly situated individuals because Defendants intended to discriminate against her. Plaintiff concedes the School Board faced a budget shortfall of approximately $10 million for the school year in question, and the monetary deficiency appeared to require the School Board to eliminate multiple positions. Several of these positions were held by Caucasian employees. While both parties agree that some Caucasian employees were reinstated to their original positions after additional funds were procured, Plaintiff also acknowledges that at least one African-American employee was likewise re-instated to her pre-RIF position. Ms. Shorter has not shown that the School Board intended to discriminate. Rather, she has only shown that *she* lost *her* position due to budget cuts and that *her* original position was not reinstated.

Plaintiff provided the Court with a letter and a deposition showing that State District Judge F. Rae Swent offered to arrange funding for the Truancy Center Coordinator position because she thought the position was necessary to comply with the state-funded Truancy and Assessment Service Center Program. (Shorter exhibits 39, 40). The letter is dated August 2003 and was sent during the time period that the school sought additional funding to pay Ms. Shorter's salary as the Truancy Coordinator. Only several months later did the school abandon its efforts. The record does not reflect that the abandonment occurred for any discriminatory reason. While Ms. Shorter thinks that the letter shows the funding was available for her position if the School Board wanted to reinstate it, the Court thinks that the letter and deposition testimony support the Defendants' assertions that they tried to find additional funding for Ms. Shorter's position but were ultimately unsuccessful in their endeavor. There is no proof by Ms. Shorter to the contrary. Thus, the burden or persuasion never shifts to the Defendants in this case because Plaintiff cannot successfully complete step one and show intentional discrimination.

c.   Title VII

Even though Ms. Shorter brings her claims under the Equal Protection Clause rather than Title VII, some circuit level courts have applied the burden shifting analysis that the Supreme Court developed in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973) to equal protection employment

discrimination claims, such as Ms. Shorter's, brought via § 1983. See <u>Hildebrant v. Illinois Dept. of Natural Resources</u>, 347 F.3d 1014 (7th Cir. 2001); <u>Richmond v. Board of Regents of Univ. of Minn.</u>, 957 F.2d 595 (8th Cir. 1992); <u>English v. Colorado Dept. of Corrections</u>, 248 F.3d 1102 (10th Cir. 2001). Some district courts in the Fifth Circuit have adopted the same approach. See <u>Williams v. Galveston Independent School Dist.</u>, 256 F.Supp. 2d 668 (S.D. Tex. 2003); <u>Baldwin v. University of Texas Medical Branch at Galveston</u>, 945 F.Supp. 1022 (S.D. Tex. 1996). Many of these courts rely on the Supreme Court's <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502,506, 113 S.Ct. 2742, 2747 n.1 (1993) opinion in which the district court applied a Title VII analysis to an equal protection claim. Since neither party challenged the district court's application on appeal, the Supreme Court articulated: "we shall assume that the <u>McDonnell Douglas</u> framework is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. §1983." While not definitive as to the use of the <u>McDonnell Douglas</u> burden shifting, the Court's statement indicates that a <u>McDonnell Douglas</u> burden shifting analysis may be appropriately applied to equal protection employment discrimination claims. Therefore, to complete the analysis, we proceed to the analysis, thus:

To establish a *prima facie* case in an equal protection employment discrimination claim under the <u>McDonnell Douglas</u> framework, the plaintiff must prove that (1) she belongs to a racial minority; (2) she applied and was qualified

for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from persons of Plaintiff's qualifications.  McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824.

If the plaintiff succeeds in making out her *prima facie* case, a presumption of discrimination is created and the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the action.  Id.  Doing so causes the burden to shift back to the plaintiff, who must then prove by a preponderance of the evidence that the employer in fact intentionally discriminated against her because of her protected status. Id. at 511.  Even though the McDonnell Douglas framework provides for burden shifting, the plaintiff retains the ultimate burden to show that the employer intentionally discriminated against her.  Machinchick v. PB Power, Inc., 398 F.3d 345 (5th Cir. 2005).

When a Title VII analysis is applied, Ms. Shorter's claims of racial discrimination fail again.  While the Court recognizes Ms. Shorter is a member of a racial minority, the record does not reveal proof by Plaintiff that she actually applied for any of the positions that were allegedly open and for which she was allegedly qualified.  At a threshold level, then, Plaintiff cannot satisfy the second requirement of the McDonnell Douglas framework:  that she sought the positions to which she now alleges she should have been appointed. As well, a thorough analysis of her claims reveals that she also cannot satisfy the other requirements:

First, the record shows that Ms. Shorter was not qualified to hold two of the other positions, namely Supervisor of Career and Technical Education (which was held before and after the RIF by the same woman) and Coordinator of Special Education Technology. Ms. Shorter lacked the prerequisite certification for the former job and master's degree for the latter. Tobi Hawthorne, who was assigned the position of Elementary Instructional Coordinator, was more qualified for the position than was Ms. Shorter. Ms. Hawthorne possessed all of Plaintiff's qualifications and had practical experience performing the exact job functions. (Deposition of Sharon Miller, Doc. 12, Exh. 7, p. 49). Since courts should not second guess an employer's choice between two qualified candidates (Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981)), the Court cannot do so here without evidence of intentional discrimination.

We also note Ms. Shorter's assertion that she should have been given one of two positions newly created *after* the RIF, those of Director and Site Coordinator of the 21st Century Grant. Plaintiff failed to provide the Court with any proof showing she was qualified for either of these positions. Absent proof of qualification, there is no merit in her claims regarding the two newly-created positions. Plaintiff both failed to establish a *prima facie* case and did not offer any evidence that would support a rational finding that the School Board intentionally discriminated against her on the basis of race.

Finally, Ms. Shorter cannot show the School Board's failure to select her for any one of the aforementioned positions violated the RIF policy, requiring any *terminated* employee be given an opportunity to work in any other position becoming available for which she is qualified and which became available (Doc. 15, Exh. 18). Ms. Shorter's suggestions that the policy was violated are woven into her discrimination claims in an attempt to show that the defendants *must* have had a racial motive for giving jobs to Caucasian applicants instead of to her. The text of the policy, however, plainly gives this advantage only to *terminated* employees ("for one year after the effective date of a termination pursuant to provisions set forth herein, the School Board shall not replace an employee whose employment has been terminated") (Doc. 15, Exh. 18). As Ms. Shorter's own pleadings reveal, her employment with the School Board was not terminated; she was transferred to another position within the system, albeit one with less pay. Therefore, La. Rev. Stat. § 17:422.5, discussed in detail hereinafter, and School Board policy are inapplicable and do not support her claim of race discrimination.

Because the Court does not find any actionable racial discrimination, Ms. Shorter's § 1983 claims of racial discrimination in violation of the Equal Protection Clause must be dismissed with prejudice.

2. DUE PROCESS

Next, the Court considers Plaintiff's allegation that the School Board violated her right not to be deprived of property without due process by failing to

provide her a hearing prior to eliminating her preferred employment position. Ms. Shorter alleges that the School Board violated both La. Rev. Stat. § 17:422.5[4] and School Board policy.[5]  Although Plaintiff also claims that her equal protection rights were violated under the Louisiana Constitution, her equal protection claim is really a due process claim and will be treated as such.

Due process requires that a person be given notice and an opportunity to be heard *before* being deprived of life, liberty or property.  Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 1493 (1985).  While the Constitution does not create protected property rights, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source."  Id. at 539.  A property right may exist in a person's employment and an employee with a constitutionally protected property interest in his position must be given "some kind of a hearing" prior to his discharge.  Id. at 542.

Ms. Shorter's claim to a property interest may correctly stand on two separate grounds.  First, a contract for employment creates a property interest.

---

[4] La. Rev. Stat. 17:422.5 provides:
Notwithstanding any other provision of law, no city or parish school board shall reduce the salary of any public elementary or secondary school teacher or any group thereof without first holding a public hearing for the purpose of allowing such teacher to appear and be heard at least thirty days before the reduction in salary shall occur.

[5] Rapides Parish School Board's Reduction in Force Policy relative to professional personnel provides that "[o]nce the placement of a certified employee has been determined, a hearing will be held, in accordance with La. Rev. Stat. § 17:422.5, prior to any change in salary." (Shorter Exhibit 18)

Wallace v. Shreve Memorial Library, 79 F.3d 427 (5th Cir. 1996).  Second, even if there was no existing, valid employment contract, La. Rev. Stat. § 17:422.5 creates a property interest in favor of Ms. Shorter.  Because Ms. Shorter had a property interest in her employment, Defendants could not deprive her of that property interest without affording her due process.  Although Plaintiff's term of employment was contractually defined as a ten-month period, she was demoted well before the term expired.[6]  Therefore, due process required that Ms. Shorter be given notice and an opportunity to be heard about why the contractual obligations of the school board should be fulfilled.  Although due process does not always require a full-blown public hearing, it does require at least some opportunity for the aggrieved party to articulate why her job should not be eliminated.  The issue, then, becomes what kind of process was due and whether the public hearing satisfied the due process requirement.[7]

Due process requires that a deprivation of property must be preceded by notice and an opportunity for a hearing.  Loudermill, 470 U.S. at 546. Thus, the hearing must be provided *before* an employee such as Ms. Shorter can be transferred or demoted.   La. Rev. Stat. § 17:422.5 and the School Board's

---

[6] The Court notes that neither the RIF nor the alleged contract that Ms. Shorter entered into with the School Board allowed that the contract was subject to the RIF or could be terminated by the RIF without a hearing.

[7] Although the Rapides Parish School Board's Reduction in Force Policy includes the process that is owed to terminated employees, the Court does not consider these procedures applicable to Ms. Shorter. Ms. Shorter was not terminated. Rather, she was re-assigned to a new position.

regulations require a public hearing be held no later than thirty (30) days prior to any reduction in salary of a certified teacher such as Ms. Shorter, so that the reduction can be discussed by the School Board and the affected teacher. La. Rev. Stat. § 17:422.5.

When Plaintiff's position was eliminated, and she was transferred to the Special Education position, her annual salary dropped by approximately $6,700. (Doc. 1). The parties disagree about whether Ms. Shorter's salary reduction was discussed at any meeting about which Plaintiff had notice, and was present. The School Board claims the policy-mandated meeting was held, that Ms. Shorter attended the meeting, that she had an opportunity to voice any concerns that she may have had about the RIF, and that she failed to object to the planned elimination of her position. While Ms. Shorter acknowledges she attended two School Board meetings after the RIF was announced, she is unsure whether elimination of the Truancy Coordinator position was discussed or whether she could have joined the public discussion. (Deposition of Hattie Shorter, Doc. 12, Exhibit 1, p. 19-20).

Further, even if the meeting constituted a hearing and satisfied all due process requirements, the School Board failed to give Ms. Shorter adequate notice of the meeting. An employee is entitled to receive actual, personal notice of the hearing. Loudermill, 470 U.S. at 546. The record reflects that Ms. Shorter never received the required notice. The School Board's policy of providing notification

of its meetings via the newspaper was insufficient as to Ms. Shorter because Ms. Shorter was entitled to notice so that *she* could have a *credible* opportunity to present her objections to the proposed action.

The parties' conflicting allegations regarding whether Ms. Shorter was afforded a hearing and whether she was notified of said hearing shows that there is a genuine issue of material fact regarding whether the events leading up to Plaintiff's change in status satisfied due process. The Defendants' Motion for Summary Judgment on the merits of Plaintiff's due process claim, therefore, will be denied.

3.   BREACH OF CONTRACT

Defendants request that the Court dismiss Ms. Shorter's breach of contract claim on the grounds that the contract was void ab initio. They argue the contract lacks mutual assent because the School Board secretary lacked the legal authority to stamp the superintendent's signature onto the contract. Therefore, they claim, no valid contract was ever created and Ms. Shorter has no claim for breach of contract. The parties disagree, however, about whether the secretary had authority to bind the Board in this context. Plaintiff contends the secretary acted routinely, her actions were sanctioned by the School Board, and the School Board entered into similar contracts via similar procedures on numerous other occasions without consent as to each contract. Given Plaintiff's claims, and that the secretary apparently had ready access to superintendent's signature stamp, the

Court is not convinced the secretary acted beyond her authority. Therefore, Defendants' Motion for Summary Judgment on the merits of Plaintiff's breach of contract claim will be denied.

     B.   Qualified Immunity

Qualified immunity protects officials acting in their official capacities from litigation and liability so long as their conduct does not violate clearly established federal statutory or constitutional rights "of which a reasonable person would have known." <u>Harlow v. Fitzgerald,</u> 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Where the defendant asserts a claim of qualified immunity, he bears the burden to prove he is entitled to immunity because he acted in good faith and within the scope of his authority. Once the defendant makes this showing, the burden shifts to the plaintiff to establish that the official's conduct violated clearly established law. <u>Oladipupo</u>, 104 F. Supp. 2d at 634 n. 6 (citing <u>Salas v. Carpenter</u>, 980 F.2d 299 (5th Cir. 1992)). In the Fifth Circuit, if the Plaintiff satisfies his burden, the burden does not then shift back to the defendant to prove he did not violate a clearly established right. <u>Id.</u> Rather, the plaintiff bears the reverse burden. <u>Id.</u>

Defendants have filed a separate Motion for Summary Judgment claiming qualified immunity on behalf of all individual defendants. The wrongs allegedly committed by these defendants allegedly occurred during the performance of their duties as public servants. After considering the Plaintiff's allegations, the Court finds Plaintiff has failed to plead facts which would give rise to liability on

the part of the individual defendants under any theory of recovery.  As explained below, there is no genuine issue of material fact with regard to any of the claims against the individual defendants.  Summary judgment is appropriate for the foregoing reasons, summarized now:

                1.    <u>Unlawful discrimination</u>

Plaintiff's claim for unlawful racial discrimination must be resolved in favor of all  Defendants, including the School Board.  As discussed above, Ms. Shorter cannot prove she was discriminated against by anyone.  Accordingly, her claims for discrimination against the individual defendants as well as the School Board will be dismissed with prejudice.

                2.    <u>Due process</u>

Plaintiff's due process claim also fails to allege facts creating liability for any individual defendant.  As discussed above, a public employee is entitled to an opportunity to be heard prior to being terminated.  <u>Loudermill,</u> 470 U.S. at 546. While alleging due process violations by the School Board, Ms. Shorter has failed to claim that any individual defendant had any School Board-imposed responsibilities that would create in him a duty to ensure Plaintiff was afforded due process.  Since a public meeting, during which Plaintiff's employment status was discussed, did occur, there is no evidence that any of the individual defendants acted improperly.  Since improper activity is a prerequisite for liability, and Ms. Shorter has not alleged any facts that would make the individual

defendants personally responsible for ensuring that Plaintiff knew of the meeting and its significance, none of them can be said to be liable for their failure to do so. Therefore, Plaintiff's due process claims against the individual defendants will be dismissed with prejudice.

3.    Breach of Contract

Ms. Shorter's claim for breach of contract must also be resolved in favor of the individual defendants.  For the purpose of discussing this claim, the Court will assume, but does not adopt, that the superintendent's signature was properly affixed to the contract with Ms. Shorter, thus creating a valid contract.  Even so, the superintendent would have been signing the contract in her capacity as a representative of the *School Board*, not as a representative of the *members* of the Board.  There is not any way, then, that the board members individually could have entered into a contract with Ms. Shorter.  As plaintiff has not alleged any facts which would show that any individual defendant is personally liable on the employment contract, these claims will be dismissed with prejudice.

IV.    Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment on the merits (Doc. 12) will be granted in part and denied in part.  It will be granted as to Plaintiff's claims of racial discrimination .  It will be denied as to Plaintiff's claims that Defendants failed to afford her adequate due process prior

to terminating her former job, reassigning her to a new job, and reducing her salary.  The Motion for Summary Judgment on qualified immunity (Doc. 11) will be granted.  A separate judgment will issue  accordingly.

SIGNED on this 28th day of October, 2005, at Alexandria, Louisiana.


Dee D. Drell
United States District Judge